# EXHIBIT E

```
 1                UNITED STATES DISTRICT COURT

 2             FOR THE WESTERN DISTRICT OF MICHIGAN

 3      ─────────────────────────────

 4      VERNON OARD,

 5                Plaintiff,

 6      V                          Case No:  1:17-CV-1136
                                   HON. PAUL L. MALONEY
 7

 8      COUNTY OF MUSKEGON, and
        14TH JUDICIAL CIRCUIT COURT,
 9
                  Defendant.
10

11      ─────────────────────────────

12

13

14                DEPOSITION OF HONORABLE TIM HICKS
        taken before Shawn M. Breimayer, Certified Shorthand Reporter,
15      at the Muskegon County Hall of Justice, 99 Terrace Street - 3rd
        Floor Conference Room, Muskegon, MI, Thursday, November 9, 2018
16      commencing at 10:05 a.m., pursuant to notice.

17      APPEARANCES:

18      FOR THE PLAINTIFF:   Sarah Riley Howard (P58531)
                             PINSKY, SMITH, FAYETTE, & KENNEDY LLP
19                           146 Monroe Center NW, Ste 805
                             Grand Rapids, MI 49503
20                           (616) 451-8496

21      FOR THE DEFENDANT:   Laura Bailey Brown (P79742)
                             SCHULTZ & JOPPICH, PC
22                           27555 Executive Dr, Ste 250
                             Farmington Hills, MI 48331
23                           (248) 489-4100

24
            Reported by:  Shawn M. Breimayer, CSR-6888
25      Job Number:   509211
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 8

```
 1        I had PPO's.  The way we arranged it everybody had a
 2        turn in the PPO barrel, so I actually had some PPO
 3        responsibility until about 2010, probably.
 4   Q.   You are chief judge pro tem correct?
 5   A.   I am.
 6   Q.   What does that mean?
 7   A.   Around here we're pretty collegiate, it doesn't mean
 8        much at all.  We always talk to each other.  Judge
 9        Marietti and I talk to each other about management
10        issues, but I can't think of anything that I have ever
11        done as pro tem, per se, you know, where somebody says
12        you're pro tem, so do this.
13   Q.   Are you sort of the next in line to be chief judge at
14        the pro tem or?
15   A.   I suppose.
16   Q.   Okay.  Are there rules here locally about how long
17        someone serves as the chief judge or is it a mere
18        election at a judge's meeting?  How does that work?
19   A.   We've always been pretty collegial, so there's no
20        rules.  In fact, we used to assiduously campaign
21        against it, you know.  A few years ago the setup we
22        were supposed to give Lansing two names, and so, the
23        second name would call Lansing and say you need to
24        appoint the first guy, so.
25   Q.   So the State Court Administrator's office has some
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 23

```
 1        and the timing here is going to be a little bit weird,
 2        but he had had an inkling of some of this previously,
 3        he told me, and I think he had -- there were two
 4        things, I thought he had involved Judge Hoogstra a
 5        little bit in it and then he talked to Eric about it,
 6        and then, he thought the problem was solved.  And it's
 7        interesting, it was -- I don't know which year it was,
 8        but I know that in -- he apparently had talked to
 9        Sandra about it, because -- we had an annual Bar
10        Association steak fry, and I think at the steak fry
11        Judge Marietti had told Sandra that he thought, you
12        know, we could handle it and the problem was solved or
13        gone away or something like that.
14   BY MS. HOWARD:
15     Q.  Okay.  Did Judge Marietti tell you that he thought it
16         was true that Mr. Stevens was, in fact, having or had
17         had romantic affairs with both Ms. France and Ms.
18         Nelson?
19     A.  He did not think it was true.
20     Q.  Did he tell you why he did not think it was true?
21             MS. BROWN:  So to the -- I just want to lodge an
22         objection for the record.  To the extent that you had
23         deliberative discussions about the process and any kind
24         of investigation into Eric Stevens with Judge Marietti
25         and or attorneys also involved in these investigations,
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 24

1    I'm just going to ask that you keep your answers to the

2    factual discussions that have been and object to, or I

3    instruct you not to answer anything that would be

4    subject to those objections that I just made.

5         THE WITNESS:  Thanks.

6         MS. BROWN:  Which are probably confusing.

7         THE WITNESS:  Well, let me see if I can try it

8    this way, at this point, there are at least four

9    different things here.  There is what's the effect on

10   the administration of the Court.  There's the theme of

11   what's the effect on the employees with whom Eric may

12   have had a direct romantic relationship.

13        There is the litigation part like hey, are we

14   going -- as a Court going to be sued or have problems

15   like this because of these various things.  And by that

16   point, there's the specter of personal liability for

17   judges, because, you know, I mean, I don't have to tell

18   you this, but if -- these are management personnel

19   issues, and so, there's some argument that the rules

20   change for judges when you do that.

21        This is not like me making a decision in a

22   courtroom, as you know.  So that that's where we are,

23   we're talking about all those things, you know, and

24   Judge Marietti thought that we had taken care of it.

25   He had specifically directed Eric, he said well, Eric,

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 25

```
 1              if these things aren't true, then you have a perception
 2              problem that you need to address.  And then, Eric came
 3              back and said, fixed.
 4    BY MS. HOWARD:
 5        Q.    Okay.  Did you and Judge Marietti discuss -- what else
 6              did you discuss in your conversation with him about
 7              your fact finding?
 8              THE WITNESS:  Okay?
 9              MS. BROWN:  Yes, about the fact finding.
10              THE WITNESS:  Well, I pushed.
11    BY MS. HOWARD:
12        Q.    What do you mean by that, your Honor?
13        A.    I pushed him.  I said I don't think we can stop at
14              that.  I think I remember telling him at one point that
15              this is like you're going to the embezzling controller
16              who tells you everything is okay.  I said, I think we
17              got to go farther, we've got to ask questions, we
18              probably have -- that's maybe another theme, involve
19              the County counsel in this one, I think.
20        Q.    So what was Judge Marietti's response to that?
21        A.    He said yeah, that's what we got to do.
22        Q.    All right.  So then, what did the two of you do?
23        A.    Well, I probably, you know, I probably talked to Jill a
24              couple more times on the phone.  I don't think we ever
25              talked face-to-face during this time, and, you know, I
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 26

```
1     kind of felt that, you know, she had sort of started
2     the ball rolling with me, so I wanted to keep her in
3     the loop.  So I did that.  I talked to Sandra a couple
4     more times, and most of those are like are you sure
5     about this, and what about this, that kind of thing.
6     They asked me -- they thought I should talk to one
7     other person during this time, so I talked to Holly
8     Liefer, L-i-e-f-e-r, which is one of our probation
9     agents.
10          Holly's involvement, she was not a participant
11    in this.  Her involvement was, like she had seen,
12    allegedly, Eric out with both Kelly and Lindsay
13    together at some point.  So there's something about
14    that, and I don't know too much more about Holly.
15    Holly confirmed some of it, but she didn't confirm the
16    more, you know, anything really racy or anything.  So
17    I'm still writing this up, and I think Judge Marietti
18    said well, we need to get Doug Hughes involved.
19  Q.  Who is Doug Hughes, your Honor?
20  A.  Doug Hughes is the county lawyer.  He's right over
21    here.  He's at Williams Hughes and whatever their firm
22    name is.
23  Q.  All right.  So, just to follow up on a couple things
24    you said.  What specifically did Ms. Liefer tell you
25    when you spoke with her?
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 28

```
 1        we're all sensitive to the fact that the three people

 2        in titled positions are all men and there's three

 3        people who are not, like chief judge, chief judge pro

 4        tem, and presiding judge of the family division.

 5   Q.   That would be Judge Pittman?

 6   A.   That would be Judge Pittman, so we're all men, you

 7        know, and I think we're all very sensitive to that.  In

 8        fact, for the last -- these are two year terms.  For

 9        the last two terms I have had a standing offer to quit

10        being chief judge pro tem, but to get a little more

11        diversity.  But they never accepted my offer.

12              So I think he felt that with Judge Hoogstra

13        involved at least we had some female perspective that

14        would be helpful.  You know, and I don't think, I don't

15        think Judge Pratter had been elected yet, so it was

16        Judge Mullally then.  So it was -- we had Judge

17        Hoogstra and Judge Smedley for females.

18   Q.   Okay.  So you and chef Judge Marietti went to Doug

19        Hughes?

20   A.   He came to Bill's chambers.

21   Q.   And when you say Bill, you mean Chief Judge Marietti,

22        for the record?

23   A.   I'm sorry.

24   Q.   I just want to make sure we're talking about the same

25        person?
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 29

```
 1    A.   I'm trying to of, in some way you don't have to say
 2         your Honor every time you're asking me these questions.
 3         I guess Tim is a little too informal.
 4    Q.   It's going to be hard to beat that out of me, your
 5         Honor, so I'll do my best.  So you attained legal
 6         advice from Mr. Hughes?
 7    A.   Yeah, yes, yes.
 8    Q.   Okay.
 9    A.   Well, I mean, the conversation was like --
10              MS. BROWN:  Let's not talk about the
11         conversation with corporation counsel.
12              THE WITNESS:  Yeah, fair enough.
13    BY MS. HOWARD:
14    Q.   And Mr. Hughes represents the County?
15    A.   Yes.  His office has represented us in other types of
16         litigation.  We don't get involved in insurance when
17         prisoners sue us, things like that.
18    Q.   And when you said Mr. Hughes has represented us in the
19         past, you mean Mr. Hughes has represented the 14th
20         Circuit Court?
21    A.   And me and a few other judges.
22    Q.   So was Mr. Hughes, as far as you were concerned, acting
23         as a lawyer for the County?
24    A.   Oh, for sure.
25    Q.   When you spoke to him?
```

Kane & Trap Litigation Services  |  800-330-1112
www.litigationservices.com

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 30

```
 1    A.  Yeah, yeah.

 2    Q.  Okay.  And approximately when was that?

 3    A.  This is in, probably June 2017.

 4    Q.  Of 2017?

 5    A.  Yeah, I mean, I think things were moving pretty quickly

 6        here.

 7    Q.  Okay.  And what happened, did anything happen like in

 8        initiation of an investigation as a result of your

 9        discussion with Mr. Hughes?

10    A.  Yes, I think Doug's office undertook an investigation.

11    Q.  All right.  And who provided direction as to the scope

12        of that action to the Hughes firm?

13    A.  Judge Marietti.

14            MS. BROWN:  Objection.  Form and foundation.

15            THE WITNESS:  Sorry.

16            MS. BROWN:  That's okay.

17 BY MS. HOWARD:

18    Q.  Did you have any input into that investigation?

19    A.  No.  I was trying to kind of hand it off and get out of

20        dodge.

21    Q.  Okay.  So were you interviewed for the investigation

22        that was conducted?

23    A.  No.

24    Q.  Did you produce any documents to Ms. Franklin, the

25        attorney who conducted the investigation?
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 31

```
 1   A.   I have just the one document you guys already talked
 2        about.
 3   Q.   And that was the memo you wrote to Judge Marietti?
 4   A.   Yeah.  And we gave that to Doug at that meeting.
 5   Q.   Okay.  And did that memo contain both fact recitation,
 6        as well as other types of questions about legal issues?
 7             MS. BROWN:  And I'm going to object.  We have
 8        objected to producing the memo as attorney client,
 9        attorney work product, and also, deliberative processes
10        privilege, so any of the contents of the memo, I
11        believe, are subject to that objection.  And I'm going
12        to instruct you not to answer any questions about the
13        contents of the memo.
14             MS. HOWARD:  I think we probably need to discuss
15        this, but we can wait until we're done with the
16        questioning.
17             MS. BROWN:  That's fine.
18             THE WITNESS:  Let me see if I can help you here.
19             MS. HOWARD:  Okay, we'll go off the record for a
20        break.
21             (Off the record at 10:44 a.m.)
22             (Back on the record at 10:46 a.m.)
23             MS. BROWN:  Subject to the objection I made
24        before, you can answer.
25             THE WITNESS:  The memo had everything.  My
```

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 32

| | | |
|---|---|---|
| 1 | | thought process, my concern about the legal stuff, |
| 2 | | facts, yes, you know, thoughts about all the things I |
| 3 | | already told you. |
| 4 | BY MS. HOWARD: | |
| 5 | Q. | Okay. |
| 6 | A. | It was all in the one memo. |
| 7 | Q. | Okay. |
| 8 | A. | Worry, you know. |
| 9 | Q. | Understood.  During the investigation, were you aware |
| 10 | | that Chief Judge Marietti confiscated Mr. Stevens' |
| 11 | | County issued cell phone? |
| 12 | A. | Probably.  Once, once Judge Marietti got involved with |
| 13 | | Doug and all that stuff I really stepped back.  I knew |
| 14 | | that Sandra Franklin was doing interviews.  I don't |
| 15 | | know much about what happened with those interviews, |
| 16 | | you know, stuff like that. |
| 17 | | MS. BROWN:  Did you mean Susan Franklin? |
| 18 | | THE WITNESS:  Susan Franklin, yeah, sorry. |
| 19 | | Thank you.  Judge Marietti, every once in awhile, would |
| 20 | | say well, here's what we've done, and I would just kind |
| 21 | | of say okay. |
| 22 | BY MS. HOWARD: | |
| 23 | Q. | Were those updates from Chief Judge Marietti at judge's |
| 24 | | meetings or more informally? |
| 25 | A. | In the beginning they were very informal.  He'd just |

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 31

1  A.  I have just the one document you guys already talked

2      about.

3  Q.  **And that was the memo you wrote to Judge Marietti?**

4  A.  Yeah.  And we gave that to Doug at that meeting.

5  Q.  **Okay.  And did that memo contain both fact recitation,**

6      **as well as other types of questions about legal issues?**

7          MS. BROWN:  And I'm going to object.  We have

8      objected to producing the memo as attorney client,

9      attorney work product, and also, deliberative processes

10     privilege, so any of the contents of the memo, I

11     believe, are subject to that objection.  And I'm going

12     to instruct you not to answer any questions about the

13     contents of the memo.

14         MS. HOWARD:  I think we probably need to discuss

15     this, but we can wait until we're done with the

16     questioning.

17         MS. BROWN:  That's fine.

18         THE WITNESS:  Let me see if I can help you here.

19         MS. HOWARD:  Okay, we'll go off the record for a

20     break.

21         (Off the record at 10:44 a.m.)

22         (Back on the record at 10:46 a.m.)

23         MS. BROWN:  Subject to the objection I made

24     before, you can answer.

25         THE WITNESS:  The memo had everything.  My

Vernon Oard vs County of Muskegon, et al.
HONORABLE TIM HICKS - 11/09/2018

Page 32

```
 1              thought process, my concern about the legal stuff,

 2              facts, yes, you know, thoughts about all the things I

 3              already told you.

 4   BY MS. HOWARD:

 5        Q.   Okay.

 6        A.   It was all in the one memo.

 7        Q.   Okay.

 8        A.   Worry, you know.

 9        Q.   Understood.  During the investigation, were you aware

10             that Chief Judge Marietti confiscated Mr. Stevens'

11             County issued cell phone?

12        A.   Probably.  Once, once Judge Marietti got involved with

13             Doug and all that stuff I really stepped back.  I knew

14             that Sandra Franklin was doing interviews.  I don't

15             know much about what happened with those interviews,

16             you know, stuff like that.

17                  MS. BROWN:  Did you mean Susan Franklin?

18                  THE WITNESS:  Susan Franklin, yeah, sorry.

19             Thank you.  Judge Marietti, every once in awhile, would

20             say well, here's what we've done, and I would just kind

21             of say okay.

22   BY MS. HOWARD:

23        Q.   Were those updates from Chief Judge Marietti at judge's

24             meetings or more informally?

25        A.   In the beginning they were very informal.  He'd just
```